Filed 7/22/26  In re P.F. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re P.F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>P.F.,<br><br>　　　Defendant and Appellant. | F090599<br><br>(Super. Ct. No. MJL019284-R1)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Madera County.  Timothy A. Kams, Judge.  (Retired judge of the Fresno County Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Meghan Cox, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

P.F. is currently charged with four counts of lewd or lascivious acts against a child 14 years or younger under Penal Code section 288. Because P.F. allegedly committed these acts when he was under 18 years old, a juvenile wardship petition was filed in the Madera County juvenile court. Pursuant to Welfare & Institutions Code section 707,[1] the juvenile court transferred P.F. to the jurisdiction of the Madera County criminal court. P.F. now argues the court abused its discretion because its decision to transfer him was not supported by substantial evidence. We vacate the transfer order and remand.

## BACKGROUND

P.F. is currently 36 years old. P.F. is also the uncle of D.B. and is seven years older than D.B. On March 8, 2022, after she had reached the age of majority, D.B. disclosed to the Madera Police Department that P.F. had sexually abused her between the ages of four and 10, which made P.F. between the ages of 11 and 17. D.B. described instances in which P.F. squeezed her breasts and buttocks, touched her vagina, and digitally penetrated her vagina. P.F. would also make D.B. touch his penis and unsuccessfully attempted to force her to orally copulate him. D.B. said that P.F. would cover her mouth, tell her not to tell anyone about what he was doing to her, and threatened to kill her or harm her mother if she told. D.B. explained she decided to disclose what P.F. had done to her because she understood that other family members had recently made similar allegations against P.F.

On July 30, 2024, the Madera County District Attorney filed a four-count juvenile wardship petition against P.F. Each count was brought under Penal Code section 288, subdivision (b)(1) and involved P.F.'s actions against D.B. Counts 1 and 2 were alleged to have occurred when P.F. was 16 years old, and counts 3 and 4 were alleged to have occurred when P.F. was 17 years old.

---

[1] Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.

2.

On August 15, 2024, the prosecutor requested that P.F.'s case be referred to the probation department for preparation of a transfer report.

On September 29, 2025, the probation department prepared a transfer report that recommended P.F. be transferred to the jurisdiction of the Madera County criminal court.

On October 6, 2025, P.F. filed a response that opposed a transfer.

On October 13, 2025, the juvenile court held a hearing and granted the transfer request. The court explained its rationale as follows:

> "Under [section 707], the Court is to look at a number of factors in considering transfer.
>
> "In this particular case, [P.F.] was between the ages [of] 16 and 18 when the alleged offenses occurred. The circumstances and gravity of the alleged offenses are quite significant, quite severe, and quite serious and they are multiple and repeated. The allegations … in the report demonstrate that [P.F.] was … an active participant; made threats to kill the victim if she told anyone. Obviously, he had an awareness of wrongdoing in light of that.
>
> "And in regards to criminal sophistication; there is, obviously, some degree of criminal sophistication, repeated assault, the same pattern, covering the victim's mouth. I wouldn't say that that's a great degree of sophistication, but it does show some degree nevertheless. I think, clearly, the age of [P.F.] at over 36 years old demonstrates that one, there's no juvenile court jurisdiction. So, obviously, [P.F.] cannot be rehabilitated prior to the expiration of that, since that ship sailed decades ago. [P.F.] had a very minor prior juvenile history. He was never put on formal probation. There are some factors or circumstances in aggravation, the victim was particularly vulnerable in light of her young age, and [P.F.] took advantage of a position of trust.
>
> "In regards to mitigation, I've referenced this, [P.F.] had no former record. But on balance, it is clear that [P.F.] is not appropriate or amenable for services or rehabilitation under the juvenile jurisdiction which, frankly, there is none. The Court will order that [P.F.] be transferred to the jurisdiction of the criminal court based on the evaluation of the criteria under [section] 707."

On October 17, 2025, P.F. appealed under section 801.

DISCUSSION

## I. Parties' Arguments

P.F. argues the juvenile court abused its discretion by granting the transfer request because the decision was not supported by substantial evidence. P.F. argues that the only significant issue was P.F.'s advanced age. P.F. argues that the Legislature has not passed statutory provisions that make advanced age alone a reason to grant a transfer and that to rely "virtually solely" on his advanced age to grant the transfer was error.

The People contend that substantial evidence supports the transfer order. The People argue that three of the five statutory factors that a juvenile court must assess in making a transfer decision weigh in favor of transfer. As to the second statutory factor, which is whether P.F. can be rehabilitated before the juvenile court loses jurisdiction, the People concede that the juvenile court's rationale is contrary to section 607, subdivision (d), but argue that substantial evidence nevertheless exists in the record and supports the court's ultimate conclusion that the second factor weighed in favor of the transfer.

## II. Legal Standards

### A. Juvenile Court Jurisdiction

In California, a juvenile court is a superior court that exercises limited jurisdiction arising under juvenile law. (*In re Chantal S.* (1996) 13 Cal.4th 196, 200.) The "initial jurisdiction" of a juvenile court is based on the age of the person when he violates a criminal law or ordinance, it is not based on the age when he is actually apprehended. (*M.E. v. Superior Court* (2023) 88 Cal.App.5th 1199, 1205 [explaining initial jurisdiction and noting that it is theoretically possible for a person to commit a crime at the age of 17, be arrested 50 years later, and be subject to the initial jurisdiction of the juvenile court at age 67].) After a juvenile court has initial jurisdiction over a minor, the juvenile court generally retains jurisdiction until he turns 21 years old. (§ 607, subd. (a); *In re Keith C.* (2015) 236 Cal.App.4th 151, 155.) However, if a person is alleged to have committed

one of 30 serious offenses under section 707, subdivision (b), then the juvenile court may continue to exercise jurisdiction over that person for a limited period after he turns 21. (§ 607, subds. (b)–(d), (f); § 707, subd. (b); see also *M.E.*, at p. 1205.)  Relevant to this case, a juvenile court "may retain jurisdiction over a person who is 25 years of age or older for a period not to exceed two years from the date of disposition if the person is found to be a person described in [s]ection 602 by reason of the commission of an offense listed in subdivision (b) of [s]ection 707.  The court shall exercise jurisdiction in conformance with the objectives of the juvenile court."  (§ 607, subd. (d).)

### B.  Transfer of Juvenile Matter to Criminal Court

If a minor was 16 years or older when he committed a felony or one of 30 serious offenses under section 707, subdivision (b), the district attorney may file a motion to transfer the minor from juvenile court to a court of criminal jurisdiction.  (§ 707, subd. (a)(1); *In re O.F.* (2026) 119 Cal.App.5th 133, 158 (*O.F.*).)  In order to transfer a minor to a criminal court, the prosecutor must show by clear and convincing evidence that the minor "is not amenable to rehabilitation while under the jurisdiction of the juvenile court."  (§ 707, subd. (a)(3) (hereinafter § 707(a)(3)); *O.F.*, at p. 159.)  To resolve a transfer motion, section 707 requires the juvenile court to consider five factors: (1) the degree of criminal sophistication exhibited; (2) whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction; (3) prior delinquent history; (4) the success of prior attempts by a juvenile court at rehabilitation; and (5) the circumstances and gravity of the offense alleged.  (§ 707(a)(3)(A)–(E); *O.F.*, at pp. 158–159; *In re Miguel R.* (2024) 100 Cal.App.5th 152, 164, 166 (*Miguel R.*).)  While the juvenile court must consider these five factors, the weight each factor receives is within the juvenile court's discretion.  (*O.F.*, at p. 159; *Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 186 (*Kevin P.*); see also *Miguel R.*, at pp. 166–167.)  Thus, the juvenile court "has the discretion to conclude that one or more of the five factors predominate so as to determine the result, even though some or all of the other factors

might point to a different result." (*In re E.P.* (2023) 89 Cal.App.5th 409, 417; see also *Kevin P.*, at p. 186.) If a juvenile court grants a transfer motion, section 707(a)(3) requires the juvenile court to "recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707(a)(3); *O.F.*, at pp. 159–160.)

Section 707 also provides additional nonexhaustive considerations for assessing each of the five factors. (§ 707(a)(3)(A)–(E); *O.F.*, *supra*, 119 Cal.App.5th at pp. 158–159; *Miguel R.*, *supra*, 100 Cal.App.5th at p. 164.) As relevant to this case, with respect to the second factor, section 707 directs the juvenile court to "give weight to any relevant factor, including, but not limited to, the minor's potential to grow and mature." (§ 707(a)(3)(B)(ii); *O.F.*, at p. 159.) Additionally, courts have recognized that the second factor is not the same as the ultimate determination of whether the minor is amenable to rehabilitation while under the jurisdiction of the juvenile court. (*Miguel R.*, at pp. 166–167.) Rather, the focus of the second factor is whether there is enough time to rehabilitate the minor while he is still eligible to remain under the juvenile court's jurisdiction. (*Id*. at p. 166.) Therefore, the prosecution should produce evidence that the juvenile court will have insufficient time to rehabilitate the minor. (*Id*. at p. 167.)

A juvenile court's decision to transfer a minor to the jurisdiction of a criminal court is reviewed under the abuse of discretion standard. (*In re O.F.*, *supra*, 119 Cal.App.5th at p. 160; *Miguel R.*, *supra*, 100 Cal.App.5th at p. 165.) A court abuses its discretion by issuing an order that exceeds the bounds of reason. (*People v. K.D.* (2025) 110 Cal.App.5th 1, 18 (*K.D.*).) A court may also abuse its discretion if its understanding of the applicable law is incorrect, it is unaware of the full scope of its discretion, or it relies on impermissible criteria. (See *People v. Knoller* (2007) 41 Cal.4th 139, 156 (*Knoller*); *K.D.*, at p. 19; *Kevin P.*, *supra*, 57 Cal.App.5th at p. 187.) The juvenile court's findings on the five section 707(a)(3) factors, as well as its ultimate finding that the minor

6.

is not amenable to rehabilitation while under its jurisdiction, are reviewed for substantial evidence. (*O.F.*, at p. 160; *Miguel R.*, at p. 165.) Because the clear and convincing evidence standard applies to a motion to transfer, we " 'determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by' " that standard. (*Miguel R.*, at p. 165; *O.F.*, at p. 160.)

## III.    Analysis

The parties' briefing reveals there is no real dispute regarding four of the five section 707(a)(3) factors. The third and fourth factors (juvenile delinquent history and past juvenile rehabilitation attempts) were essentially nonexistent and weighed against transfer; the first factor (criminal sophistication) weighed slightly in favor of a transfer; and the fifth factor (circumstances and gravity of the charged offense) weighed significantly in favor of transfer.[2] The only dispute appears to be with the second factor (rehabilitation prior to the expiration of the juvenile court's jurisdiction), and P.F.'s contention that his age alone should not dictate whether he is transferred.

As quoted above, the juvenile court's entire assessment of the second factor was as follows: "I think, clearly, the age of [P.F.] at over 36 years old demonstrates that one, there's no juvenile court jurisdiction. So, obviously, [P.F.] cannot be rehabilitated prior to the expiration of that, since that ship sailed decades ago." We understand the court to mean that the second factor weighed in favor of transfer because, at the age of 36, P.F.

---

[2]    Without citation to relevant authority, P.F.'s reply brief argued that the juvenile court put too much emphasis on the fifth factor. This argument has been forfeited because it is raised for the first time in the reply brief (*People v. Oyler* (2025) 17 Cal.5th 756, 848, fn. 46; *People v. Ng* (2022) 13 Cal.5th 448, 568, fn. 13), and because it is not adequately developed or supported (*People v. Ramirez* (2024) 104 Cal.App.5th 315, 329–330). Moreover, P.F.'s argument does not consider that juvenile courts have the discretion to assign different weights to the section 707(a)(3) factors. (*O.F.*, *supra*, 119 Cal.App.5th at p. 159; *Kevin P.*, *supra*, 57 Cal.App.5th at p. 186.)

was already outside of its jurisdiction and thus, could not be rehabilitated prior to jurisdiction expiring. There is a problem with this analysis.

Under section 607, subdivision (d), if a section 707, subdivision (b) offense is involved, a juvenile court may retain jurisdiction over a person who is 25 or older for two years from the date of disposition. (§ 607, subd. (d).) As the People recognize in their brief, P.F. meets the section 607, subdivision (d) criteria. First, P.F. is older than 25 years old. Second, he faces four counts under Penal Code section 288, subdivision (b)(1), which is an offense that is listed under section 707, subdivision (b). (§ 707, subd. (b)(6).) Finally, because P.F.'s case remains pending, there has been no disposition. Accordingly, under the plain language of section 607, subdivision (d), the juvenile court can maintain jurisdiction over P.F. for up to two years once there has been a disposition of his case. (§ 607, subd. (d).)

Because the juvenile court found that it had lost jurisdiction based on P.F.'s age alone, its finding is contrary to section 607, subdivision (d) and thus, rests on an incorrect understanding of the law. Therefore, the court abused its discretion in its assessment of the second factor of section 707(a)(3). (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540 ["An order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion."]; *Knoller*, *supra*, 41 Cal.4th at p. 156; *K.D.*, *supra*, 110 Cal.App.5th at pp. 18–19; *Kevin P.*, *supra*, 57 Cal.App.5th at p. 187.)

The People argue that we need not consider the juvenile court's rationale because there is substantial evidence in the record that P.F. could not be rehabilitated prior to the court losing jurisdiction. However, if a juvenile court grants a transfer motion, it is statutorily required to recite the basis for its decision and the reasons for its findings. (§ 707(a)(3); *O.F.*, *supra*, 119 Cal.App.5th at pp. 159–160.) That is, the juvenile court should explain why it granted the transfer by articulating its evaluative process, detailing how the evidence was weighed, and identifying the specific facts which persuaded it to grant the transfer. (*C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1037.) Also, a

8.

juvenile court is statutorily required to consider five specific factors in making a transfer decision (although it does retain the discretion to assign different weights to the five factors). (§ 707(a)(3); *O.F.*, at p. 159; *Kevin P.*, *supra*, 57 Cal.App.5th at p. 186.) These statutory mandates both prescribe a particular form of assessment that must be undertaken by the juvenile court and create express transparency in the juvenile court's decisionmaking process. Appellate courts in turn review the juvenile court's disclosed findings and reasoning in order to ensure proper compliance with the transfer scheme. Given these requirements for a transfer of a minor to a criminal court, a juvenile court's rationale cannot be ignored.

Additionally, and more importantly, all defendants "are entitled to decisions made in the exercise of the trial court's informed discretion." (*People v. Murphy* (2025) 116 Cal.App.5th 249, 256.) A court does not exercise informed discretion when its decision is based on a misunderstanding of applicable law. (See *ibid.*; *K.D.*, *supra*, 110 Cal.App.5th at pp. 18–19; see also *Williams v. Superior Court*, *supra*, 3 Cal.5th at p. 540.) Because there has been a misunderstanding of applicable law by the juvenile court, we must determine whether the record clearly indicates that the juvenile court still would have ordered P.F. transferred to the criminal court if it had correctly understood the applicability of section 607, subdivision (d). (See *Knoller*, *supra*, 41 Cal.4th at p. 158; *Murphy*, at p. 256; *In re J.M.* (2024) 103 Cal.App.5th 745, 753; *Kevin P.*, *supra*, 57 Cal.App.5th at p. 201; see also *O.F.*, *supra*, 119 Cal.App.5th at p. 140 [remanding matter for a second section 707, subdivision (a) transfer hearing in light of legislative changes that occurred after the first transfer hearing].)

Here, there was no assessment by the juvenile court concerning the operation of section 607, subdivision (d) or when jurisdiction would likely expire under that provision. Nor was there an assessment or discussion of any considerations that would be relevant to the possible rehabilitation of P.F. prior to expiration of juvenile court jurisdiction. Of course, it is understandable why such findings were not made. If the court had been

9.

correct in its determination that P.F. had already "aged out" of its jurisdiction, there would be no need for additional findings. But due to the misunderstanding of applicable law, we are left with a sparse record that sheds no light on what the court would have found or done had it correctly considered section 607, subdivision (d). Moreover, the second factor is important to resolving the transfer request. The burden that must be met for a transfer is clear and convincing evidence (§ 707(a)(3)), and there are two factors that weigh against transfer and two factors that weigh in favor of transfer (one of which to only a slight degree). Under this record, the second factor appears to be the decisive factor in the transfer decision because it would break the tie between the other four factors.

In conclusion, given the apparent importance of the second factor, and that the record does not clearly indicate how the juvenile court would have assessed the second factor under the applicable law, we must remand this matter for the court to make further findings.[3] (*Knoller*, *supra*, 41 Cal.4th at p. 158 [remanding a new trial ruling in part where the trial court utilized an incorrect legal standard and it was "uncertain whether the trial court would have reached the same result using correct legal standards"]; *People v. Murphy*, *supra*, 116 Cal.App.5th at p. 257; *In re J.M.*, *supra*, 103 Cal.App.5th at p. 753; *Kevin P.*, *supra*, 57 Cal.App.5th at p. 201.)

---

[3]     We recognize that a single section 707(a)(3) factor can alone justify a transfer from the juvenile court to the criminal court, depending on its weight. (*In re E.P.*, *supra*, 89 Cal.App.5th at p. 417.) However, the juvenile court's decision did not state the fifth factor so predominated that it was the basis for the transfer decision. Rather, as we understand the court's order, the transfer was justified based on the combined effect of the first, second, and fifth factors.

## DISPOSITION

The order transferring P.F. to the criminal court is vacated. This matter is remanded to the juvenile court to reconsider the prosecution's transfer request in a manner consistent with this opinion.[4]

HARRELL, J.

WE CONCUR:


FRANSON, Acting P. J.


DESANTOS, J.

---

[4] We express no opinion as to what the result of the transfer request should be. We do note, however, that the juvenile court's analysis listed the section 707(a)(3) factors and then stated with little explanation that P.F. was not amenable to rehabilitation. In light of section 707(a)(3)'s command for juvenile courts to recite the basis for their decisions, including reasons supporting relevant findings (§ 707(a)(3)), this type of analysis has been found to be wanting. (*C.S. v. Superior Court*, *supra*, 29 Cal.App.5th at p. 1035.) On remand, the court should "clearly and explicitly 'articulate its evaluative process' by detailing 'how it weighed the evidence' and by 'identify[ing] the specific facts which persuaded the court' to reach its decision to transfer [P.F.] to adult/criminal court." (*Ibid.*)